IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

TT CLUB MUTUAL INSURANCE LTD,      *
on its own behalf and on            *
behalf of its reinsured UK P&I      *
CLUB N.V. and PGS USA, LLC,         *
                                     *
                                     *        CV 424-056
        Plaintiff,                   *
                                     *
        v.                           *
                                     *
PHILADELPHIA INDEMNITY               *
INSURANCE COMPANY and EXPRESS        *
SERVICES, INC.,                      *
                                     *
        Defendants.                  *

---

**O R D E R**

---

Presently pending before the Court is Defendant Express Services, Inc.'s ("Express") motion to dismiss. (Doc. 15.) For the following reasons, Express's motion to dismiss is **DENIED**.

## I. BACKGROUND

This case arises out of Defendants' refusal to defend and indemnify PGS USA, LLC ("PGS") and its employees, Kenneth Jackson and David Bacon, for a wrongful death action filed on behalf of Versalius Johnson, Sr. ("V. Johnson") after he was crushed in a forklift accident that caused his death (the "Accident") at PGS's warehouse in Port Wentworth, Georgia (the "PGS Warehouse"). (Doc. 1, at 1.) The wrongful death action was filed in the State Court of Gwinnett County, Georgia, and is captioned Spence, et al. v.

PGS USA, LLC, et al., No. 22-C-02753-S1 (the "Spence Action").
(Id.)

**A. The Spence Action**

The Accident involved two forklift operators: (1) Michael Johnson ("M. Johnson"), an Express employee assigned to work at the PGS Warehouse pursuant to a Temporary Staffing Services Agreement between Express and PGS (the "Services Agreement"); and (2) Jackson, a PGS Employee. (Id. at 1-2.) The Spence Action alleged M. Johnson and Express were both negligent, and Express was vicariously liable for Johnson's negligence; that Jackson and PGS were both negligent, and PGS was vicariously liable for Jackson's negligence; and that Bacon, the manager of the PGS Warehouse, was also negligent, and PGS was vicariously liable for Bacon's negligence. (Id. at 1-2, 9.)

The Spence Action alleged that on February 14, 2022, forklift operators Jackson and M. Johnson loaded cargo onto a flatbed truck operated by V. Johnson at the PGS Warehouse. (Id. at 9.) V. Johnson attempted to deliver the cargo in Winder, Georgia, but it was rejected, so he returned it to the PGS Warehouse. (Id.) While Jackson and M. Johnson were unloading the returned cargo, the cargo fell and/or was knocked off the side of the flatbed truck and crushed V. Johnson to death. (Id. at 10.)

The Spence Action alleged Jackson and M. Johnson had a duty to exercise ordinary care in loading and unloading the cargo, and

2

they breached that duty and were negligent.  (Id.)  Further, it alleged PGS was vicariously liable for the negligent acts and omissions of Jackson and M. Johnson, and Express was vicariously liable for the negligent acts and omission of M. Johnson.  (Id.) Finally, it alleged Bacon had a duty to exercise ordinary care in supervising, training, and instructing forklift operators at the PGS Warehouse on the loading and unloading of cargo, and he breached that duty and was negligent.  (Id.)  The Spence Action alleged PGS was also vicariously liable for Bacon's negligent acts and omissions.  (Id.)  Ultimately, the Spence Action settled for a confidential amount in February 2024.  (Id. at 11.)

**B. The Services Agreement**

PGS and Express entered into the Services Agreement on April 29, 2020, and Express agreed to provide Express employees to PGS for temporary staffing.  (Id. at 6.)  The relevant portions of the Services Agreement are as follows:

> Section 4.2: [Express] shall indemnify, defend, and hold harmless [PGS] from any claims arising from Assigned [Express] Employee claiming to be employees of [PGS] or that otherwise arise from Assigned [Express] Employee's assignment to [PGS].
>
> . . .
>
> Section 8.2: General Liability.  [Express] has procured, and will maintain in effect throughout the life of this Agreement, commercial General Liability insurance coverage (occurrence form) including coverage for products/completed operations, independent contractors, and blanket contractual liability specifically covering the obligations assumed by [PGS].  Such insurance shall

have the following limits of liability: $1,000,000
combined single limit of liability each occurrence
bodily injury and/or property damage.

. . .

Section 8.5: Excess Liability. [Express] has procured
and shall maintain in effect through the life of this
Agreement, Excess Liability coverage sitting excess of
the Commercial General Liability, Employers Liability
and Business Auto Liability in the amount of $10,000,000
combined single limit of liability each occurrence for
bodily injury and/or property damage. Excess liability
shall follow form with respect to its underlying
policies.

. . .

Section 8.7: Additional Insured. All policies of
insurance required under this Agreement, except those
reference in Paragraph 8.1, shall be endorsed to name
[PGS] as an Additional Insured."

. . .

Section 8.8: Primary Insurance. All policies of
insurance required under this Agreement, except those
referred in Paragraph 8.1, shall be endorsed to provide
that all such insurances are primary and non-
contributing with any other insurance maintained by
[PGS].

. . .

Section 13.3: [Express] further agrees to indemnify,
defend, save and hold harmless [PGS], its officers,
directors, employees, and agents from and against all
claims, losses, damages, and liabilities, including but
not limited to reasonable attorneys' fees and other
defense costs and expenses, to the extent resulting from
the negligence or omission of the Assigned [Express]
Employee that occurs while the Assigned [Express]
Employee is assigned to [PGS], as well as any negligence
or omission of [Express] during the term hereof.

(Doc. 16-1, at 4, 6, 8.)

4

**C. Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") Policies**

Philadelphia Indemnity issued a commercial general liability policy, No. PHPK2329531, to Express (the "CGL Policy"), for the period from October 1, 2021 to October 1, 2022 with a $5 million each occurrence limit. (Doc. 1, at 7.) Express is the "Named Insured," and the CGL Policy contains an endorsement titled "Additional Insureds When Required by Contract" that states:

> Who Is An Insured is amended to include as an additional insured any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional insured for "bodily injury," "property damage" or "personal and advertising injury" but only for liability arising out of the negligence of the named insured.

(Id. at 7-8.) The CGL Policy states "insureds" includes: "Your employees, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." (Id. at 8 (alterations adopted).)

Philadelphia Indemnity also issued a commercial umbrella liability policy, No. PHUB786438, to Express (the "Umbrella Policy") for the period from October 1, 2021 to October 1, 2022 with a $20 million each occurrence limit. (Id.) The Umbrella Policy sits above the CGL Policy and provides coverage for amounts in excess of the $5 million limit of the CGL Policy. (Id.) It contains a general endorsement that states it will "follow the same provisions, exclusions and limitations that are contained in

5

the applicable 'underlying insurance' . . . unless otherwise directed by this policy." (<u>Id.</u>)

**D. The TT Club Mutual Insurance Ltd. ("TT Club") Policy**

TT Club issued a policy, No. 70860/2021/001, to B Pacorini SpA, for the period from November 1, 2021 to October 31, 2024 (the "TT Club Policy"), with a 20 million Euro per accident limit. (<u>Id.</u> at 9.) PGS qualifies as an insured under the TT Club Policy. (<u>Id.</u>)

**E. Defense and Indemnification Under the Policies**

PGS, Jackson, and Bacon tendered the Spence Action to Express and Philadelphia Indemnity for defense and indemnification. (<u>Id.</u> at 10.) Philadelphia Indemnity refused to provide them full defense and indemnity coverage. (<u>Id.</u> at 11.) For PGS, Philadelphia Indemnity agreed to defend, but refused to provide full indemnity coverage. (<u>Id.</u>) As for Jackson and Bacon, Philadelphia Indemnity refused to provide any defense or indemnity coverage, contending they did not qualify as additional insureds. (<u>Id.</u>)

Express agreed to defend PGS, but refused to fully indemnify it because it believed PGS is entitled to indemnity only to the extent PGS was vicariously liable for M. Johnson's negligence, but not for the direct negligence of PGS, Bacon, or Jackson. (<u>Id.</u>) Express refused to provide any defense or indemnity coverage to Jackson or Bacon. (<u>Id.</u>)

Since Express and Philadelphia Indemnity refused to defend Jackson and Bacon, TT Club agreed to defend them in order to protect the interests of its insured, PGS. (Id.) TT Club also funded 50% of the settlement. (Id. at 12.) It reserved the right to pursue recovery of the funds it paid from Express and Philadelphia Indemnity. (Id.) PGS also reserved its rights against Express and Philadelphia Indemnity. (Id.)

Under the doctrines of equitable and conventional subrogation, TT Club subrogated the rights of PGS, Jackson, and Bacon against Express and Philadelphia Indemnity to the extent of TT Club's payment for the defense and indemnity of PGS, Jackson, and Bacon. (Id.) Under the doctrine of equitable contribution, TT Club asserts it is entitled to recover the funds it paid for the defense and indemnity of PGS, Jackson, and Bacon from Express and Philadelphia Indemnity. (Id.) TT Club asserts PGS is an additional insured under the CGL Policy and Umbrella Policy, and Philadelphia Indemnity was obligated under both policies to provide full defense and indemnity coverage to PGS in the Spence Action. (Id.) Further, because PGS is an insured, Jackson and Bacon are also insureds under the policies as employees of PGS; thus, Philadelphia Indemnity was also obligated to provide full defense and indemnity coverage to Jackson and Bacon. (Id. at 13.)

TT Club further alleges the Spence Action was based on the negligence of M. Johnson, who was assigned to PGS from Express;

7

thus, Express was also negligent and was obligated under the
Services Agreement to provide full defense and indemnity coverage
to PGS, Jackson, and Bacon.  (<u>Id.</u>)  By refusing to provide full
defense and indemnity coverage, TT Club asserts Philadelphia
Indemnity breached the CGL Policy and Umbrella Policy, and Express
breached the Services Agreement.  (<u>Id.</u>)  In the alterative, TT
Club asserts that if Philadelphia Indemnity argues it was only
obligated to indemnify PGS for $1 million, Express breached the
Services Agreement by failing to obtain commercial general
liability coverage and excess liability coverage within the limits
specified in the Services Agreement.  (<u>Id.</u>)  Based on these
actions, TT Club brings claims for declaratory judgment, breach of
contract, equitable contribution, and contract reformation against
Philadelphia Indemnity and Express.  (<u>Id.</u> at 13-20.)

**F. Express's Motion to Dismiss**

Express moves to dismiss pursuant to Federal Rules of Civil
Procedure 12(b)(1) and 12(b)(6).[1]  (Doc. 15.)  First, Express
argues the Court lacks jurisdiction because the claims are not
ripe for review since there have been no conclusive findings of
negligence, and even if they were ripe, they should be dismissed
for lack of a finding of liability since a settlement agreement

---

[1] TT Club points out that Express's responsive pleading was due April 22, 2024,
but this motion was not filed until May 1, 2024; thus, it is untimely and
subject to denial on this basis alone.  (Doc. 18, at 2.)  While the Court
recognizes this to be true, since the Parties addressed the merits of the motion
to dismiss in their briefs, it will do the same herein.

was reached in the Spence Action. (<u>Id.</u> at 1-2.) Next, it asserts the Services Agreement clearly provides that Express does not owe a contractual duty to defend or indemnify PGS or PGS's employees for their own negligent acts or omissions. (<u>Id.</u> at 2.) Alternatively, it asserts the Services Agreement is ambiguous, and the Court must strictly construe the language against PGS. (<u>Id.</u>) Express argues it only owed a contractual duty to defend and indemnify PGS for Express's or Express's employees' negligent acts or omissions. (<u>Id.</u> at 2-3.) TT Club responded in opposition, asserting Express's arguments are without merit and completely ignore the well-settled Georgia law governing indemnity agreements. (Doc. 18, at 2.) The Court addresses the Parties' arguments below.

## II. LEGAL STANDARD

Express moves to dismiss based on ripeness, which "goes to whether the district court has subject matter jurisdiction to hear the case." <u>Digital Props., Inc. v. City of Plantation</u>, 121 F.3d 586, 591 (11th Cir. 1997) (citation omitted). A motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) may either be a "facial" or "factual" attack. <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 924-24 n.5 (11th Cir. 2003) (citation omitted). Since "ripeness pertains to federal courts' subject matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion" and "poses a

facial, rather than a factual, attack on the allegations." <u>Bussey</u>
<u>v. Macon Cnty. Greyhound Park, Inc.</u>, No. 3:10-CV-191, 2011 WL
1216296, at *5 n.6 (M.D. Ala. Mar. 31, 2011) (citing <u>Region 8</u>
<u>Forest Serv. Timber Purchasers Council v. Alcock</u>, 993 F.2d 800,
807 (11th Cir. 1993); <u>McElmurray v. Consol. Gov't of Augusta-</u>
<u>Richmond Cnty.</u>, 501 F.3d 1244, 1251 (11th Cir. 2007)). "A 'facial
attack' on the complaint requires the court merely to look and see
if the plaintiff has sufficiently alleged a basis of subject matter
jurisdiction, and the allegations in his complaint are taken as
true for the purposes of the motion." <u>McElmurray</u>, 501 F.3d at
1251 (citations and internal quotation marks omitted and
alterations adopted).

Express's alternative arguments in support of dismissal are
brought pursuant to Rule 12(b)(6) for failure to state a claim.
(Doc. 18, at 7.) In considering a motion to dismiss under Rule
12(b)(6), the Court tests the legal sufficiency of the complaint.
<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), *overruled on other*
*grounds by* <u>Davis v. Scherer</u>, 468 U.S. 183 (1984). Pursuant to
Federal Rule of Civil Procedure 8(a)(2), a complaint must contain
"a short and plain statement of the claim showing that the pleader
is entitled to relief" to give the defendant fair notice of both
the claim and the supporting grounds. <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 555 (2007) (citation omitted). Although "detailed
factual allegations" are not required, Rule 8 "demands more than

an unadorned, the - defendant - unlawfully - harmed - me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-80. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

The Court notes that pursuant to the Erie doctrine, Georgia law governs this suit. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1939). Under Georgia law, the scope of a written insurance agreement, like any other contract, is a question of law for the Court. O.C.G.A. § 13-2-1; Molly Pitcher Canning Co. v. Cent. of Ga. Ry. Co., 253 S.E.2d 392, 395 (Ga. Ct. App. 1979). "[W]hether an insurer has a duty to defend depends on the language of the

11

policy as compared with the allegations of the complaint." <u>Hoover v. Maxum Indem. Co.</u>, 730 S.E.2d 413, 418 (Ga. 2012). To avoid a duty to defend or indemnify, the complaint's allegations must unambiguously exclude coverage under the relevant policy. <u>JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.</u>, 717 S.E.2d 219, 223 (Ga. Ct. App. 2011).

## III. DISCUSSION

The Court addresses Express's arguments for dismissal in turn.

### A. Ripeness

First, Express argues its duty to indemnify has not been triggered because no findings of negligence were conclusively established in the Spence Action. (Doc. 15, at 7-9.) Express raises this as a ripeness issue, arguing the statute of limitations had not started to run because if no liability was established, no duty to indemnify is present either. (<u>Id.</u> at 7-8.) Alternatively, it argues if the claims are ripe, they must be dismissed for lack of a finding of liability because there was a confidential settlement in the Spence Action, and no parties admitted fault. (<u>Id.</u> at 8.) Since Express's duty to indemnify was never triggered by a finding of negligence, it argues TT Club's indemnity claim must be dismissed. (<u>Id.</u> at 9.)

In response, TT Club argues a settlement does not bar an indemnitee from pursuing a contribution claim from a third-party, and the Georgia Code expressly permits the right of indemnification in the event of settlement or compromise.  (Doc. 18, at 10-11.)  Further, TT Club argues the plain terms of the Services Agreement state Express is required to defend and indemnify PGS and its employees against "all claims," and the Spence Action plainly constitutes a claim.  (Id. at 12.)  It argues that even if liability was not conclusively established, Express is still required to indemnify TT Club on behalf of PGS.  (Id. at 12-14.)

Under Georgia law, "the fact that an indemnitee has settled or compromised the underlying tort action brought by the injured party does not bar the indemnitee from pursuing a claim for indemnification or contribution from a third-party indemnitor." U.S. Lawns, Inc. v. Cutting Edge Landscaping, LLC, 716 S.E.2d 779, 783 (Ga. Ct. App. 2011) (citations omitted).  Thus, the Court finds the fact a settlement was reached in the Spence Action does not mean this matter is not ripe or that the Court lacks jurisdiction over this action.

As to Express's argument that there is no duty to indemnify because there were no findings of negligence, the Court finds this equally meritless.  (See Doc. 15, at 8.)  Since Georgia law allows for indemnification when a settlement is reached, the only possible interpretation of this is to read it as allowing indemnification

13

without a finding of negligence. Moreover, Georgia policies support this reading, as "[t]he strong public policy of [Georgia] is to encourage settlement negotiations and settlement." <u>Dennis v. City of Atlanta</u>, 751 S.E.2d 469, 473 (Ga. Ct. App. 2013) (citations and internal quotation marks omitted). Thus, the Court finds there is no law limiting indemnification when negligence has not been conclusively established because a settlement was reached. Express's motion to dismiss is **DENIED** as to the issue of ripeness.

## B. Services Agreement Language

Next, Express argues the Services Agreement clearly provides it did not owe a contractual duty to defend and indemnify PGS for PGS's or PGS's employees' own negligence pursuant to Sections 4.2 and 13.3, outlined above. (Doc. 15, at 9.) Express asserts that under these sections of the Services Agreement, it only owed a duty to defend and indemnify PGS for Express's own negligence or that of Express's associates placed at PGS. (<u>Id.</u>) TT Club argues this is a meritless assertion unsupported by Georgia law. (Doc. 18, at 15.) It argues that "[u]nder Georgia Law, unless an agreement for indemnification explicitly states that the negligence of the indemnitee is covered, the agreement will not be interpreted as a promise to save the indemnitee from liability resulting strictly and exclusively from its own negligence." (<u>Id.</u>

(quoting Laws. Title Ins. Corp. v. New Freedom Mortg. Corp., 645 S.E.2d 536, 542 (Ga. Ct. App. 2007)).)

Express agreed to "indemnify, defend, and hold harmless" PGS from "any claims . . . that otherwise arise from" the Express employee's assignment to PGS. (Doc. 16-1, at 4.)

> [Express] further agree[d] to indemnify, defend, save and hold harmless [PGS] . . . from and against all claims, losses, damages, and liabilities, including but not limited to reasonable attorneys' fees and other defense costs and expenses, to the extent *resulting from the negligence or omission of the [Express employee]* that occurs while the [Express employee] is assigned to [PGS], as well as any negligence or omission of [Express].

(Id. at 8 (emphasis added).) Based on this language, Express moves to dismiss because the Spence Action asserted no allegations of direct negligence against Express. (Doc. 15, at 10.) However, TT Club argues the Spence Action asserted claims "arising from" Johnson's assignment to PGS, "resulting from" both his negligence while assigned to PGS and the negligence of Express; thus, Express was obligated to provide full defense and indemnity coverage to PGS and its employees. (Doc. 18, at 20.)

Under Georgia law, when "an indemnification clause requires indemnification of losses that 'arise out of' certain specified events but does not explicitly mention the indemnitee's negligence, the clause still requires full indemnification although the indemnitee's negligence may have partially caused the loss." Lawyers Title Ins. Corp., 645 S.E.2d at 543 (citations

omitted).  The Services Agreement does not specifically mention TT Club's negligence; thus, it must still require Express to defend and indemnify even if TT Club's negligence may have partially caused the loss.  Based on this, the Court finds Express's motion to dismiss is **DENIED** as to the failure to state a claim under the terms of the Services Agreement.

## C. Ambiguous Language

In the alternative, Express argues the Services Agreement is ambiguous; thus, the Court must strictly construe it against TT Club with every presumption against an intention to defend and indemnify.  (Doc. 15, at 13-14.)  Express provides no explanation as to what is ambiguous about the language, and provides the Court with no case law comparing the language to other Georgia cases that would be instructive.  In response, TT Club argues there is no ambiguity in the relevant provisions of the Services Agreement.  (Doc. 18, at 21.)  The Court agrees with TT Club.

Based on the fact Express fails to provide the Court with specific arguments about the alleged ambiguities in the Services Agreement, and the fact there is extensive Georgia case law focused on the interpretation of insurance clauses, some of which the Court cites above, the Court finds there is no clear ambiguity in the Services Agreement that warrants construing it against PGS.  See Travelers Prop. Cas. Co. of Am. v. CVB Indus. Contracting, Inc., 697 F. Supp. 3d 1334, 1343 (M.D. Ga. 2023) ("Under Georgia law,

where the terms of a contract are plain and unambiguous, the construction of the contract is a question of law."). As such, Express's motion to dismiss is **DENIED** as to its ambiguity arguments.

### IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Express's motion to dismiss (Doc. 15) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of March, 2025.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA