**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| TT CLUB MUTUAL INSURANCE LTD, on its own behalf and on behalf of its reinsured UK P&I CLUB N.V. and PGS USA, LLC, | * * * * | |
| | * | CV 424-056 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY and EXPRESS SERVICES, INC., | * * * | |
| | * | |
| Defendants. | * | |

**O R D E R**

Presently pending before the Court are Plaintiffs' motion for clarification of the Court's March 24, 2025 Order (Doc. 33), Plaintiffs' motion for partial summary judgment as to Defendant Philadelphia Indemnity Insurance Company ("PIIC") (Docs. 42, 50)[1], Plaintiffs' motion for partial summary judgment as to Defendant Express Services, Inc. ("Express") (Docs. 43, 44), PIIC's motion for judgment on the pleadings (Doc. 46), and Express' motion for summary judgment (Doc. 49). The Court considers each motion in turn.

---

[1] Plaintiffs filed both an unredacted, sealed version of their motion (Doc. 42) and a redacted version (Doc. 50). For ease of reference, the Court refers to the redacted version of their motion throughout this Order. The Court will do the same with the other motion for partial summary judgment and additional sealed filings from Plaintiffs. The only redaction appears to be the settlement amount which does not affect the Court's decisions.

## I. BACKGROUND

The Court provides a general overview of the case and supplements below for each motion. Plaintiffs filed suit on March 27, 2024, alleging that Defendants refused to defend and indemnify PGS USA, LLC ("PGS") and its employees, Kenneth Jackson and David Bacon, for a wrongful death action filed on behalf of Versalius Johnson, Sr. ("V. Johnson") after he was crushed in a forklift accident that caused his death (the "Accident") at PGS' warehouse in Port Wentworth, Georgia (the "PGS Warehouse"). (Doc. 1, at 1.) TT Club Mutual Insurance Ltd. ("TT Club") brings claims as a subrogee of PGS. (Id. at 4.)

The underlying wrongful death action was filed in the State Court of Gwinnett County, Georgia - Spence, et al. v. PGS USA, LLC, et al., No. 22-C-02753-S1 (the "Spence Action"). (Id.) The Spence Action settled in February 2024 (the "Settlement"). (Id. at 11.) The Accident involved two forklift operators: (1) Michael Johnson ("M. Johnson"), an Express employee assigned to work at the PGS Warehouse pursuant to a Temporary Staffing Services Agreement between Express and PGS (the "Services Agreement"); and (2) Jackson, a PGS Employee. (Id. at 1-2.) PGS and Express entered the Services Agreement on April 29, 2020, and Express agreed to provide PGS with Express employees for temporary staffing. (Id. at 6.)

2

There are several insurance policies at issue. First, PIIC issued a commercial general liability policy, No. PHPK2329531, to Express (the "CGL Policy") with a $5 million each occurrence limit. (Id. at 7.) PIIC also issued a commercial umbrella liability policy, No. PHUB786438, to Express (the "Umbrella Policy") (collectively, with the CGL Policy, the "Policies") with a $20 million each occurrence limit. (Id. at 8.) The Umbrella Policy sits above the CGL Policy and covers amounts in excess of the $5 million limit of the CGL Policy. (Id.) Second, TT Club issued a policy, No. 70860/2021/001, to B Pacorini SpA (the "TT Club Policy"), with a 20 million Euro per accident limit. (Id. at 9.) PGS qualifies as an insured under the TT Club Policy. (Id.)

Pursuant to the Policies, PGS, Jackson, and Bacon tendered the Spence Action to Express and PIIC for defense and indemnification. (Id. at 10.) PIIC agreed to defend PGS, but refused to provide full indemnity coverage. (Id. at 11.) PIIC refused to provide any defense or indemnity coverage for Jackson and Bacon, contending they did not qualify as additional insureds. (Id.) Meanwhile, Express agreed to defend PGS, but refused to fully indemnify it because it believed PGS was entitled to indemnity only to the extent PGS was vicariously liable for M. Johnson's negligence, but not for the direct negligence of PGS, Bacon, or Jackson. (Id.) Express also refused to provide any defense or indemnity coverage to Jackson or Bacon. (Id.)

Since Express and PIIC refused to defend Jackson and Bacon, TT Club agreed to defend them to protect the interests of its insured, PGS.  (Id.)  TT Club and PGS then reserved their rights to pursue recovery of the funds they paid from Express and PIIC, which is how this suit arises.  (Id. at 12.)

## II. PLAINTIFFS' MOTION TO CLARIFY

First, Plaintiffs move for clarification of the Court's March 24, 2025 Order that denied Express' motion to dismiss.  (Doc. 33.) In two spots in which the Court discussed the Services Agreement between Express and PGS, it inadvertently referred to TT Club as a party to the Services Agreement instead of PGS.  (Doc. 32, at 15-16.)

The Court clarifies that the Services Agreement was between Express and PGS, not TT Club.  Thus, Express' duties under the Services Agreement were owed to PGS, not TT Club.  Plaintiff's motion for clarification (Doc. 33) is **GRANTED**, and the Court's March 24, 2025 Order shall be amended to reflect these clarifications.[2]

---

The highlighted portions of Plaintiffs' Exhibit 1 should state PGS instead of TT Club.  (Doc. 33-1, at 1-2.)

### III. PIIC'S MOTION FOR JUDGMENT ON THE PLEADINGS

The Court now considers PIIC's motion for judgment on the pleadings.  (Doc. 46.)

**A. Legal Standard**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."  Cunningham v. Dist. Att'y's Off. for Escambia Cnty., 592 F.3d 1237, 1255 (11th Cir. 2010) (citation omitted).

"A motion for judgment on the pleadings under Rule 12(c) is governed by the same reviewing standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)."  Batterman v. BR Carroll Glenridge, LLC, 829 F. App'x 478, 480 (11th Cir. 2020) (citation omitted).  Therefore, when considering a motion for judgment on the pleadings, the Court must "accept as true all material facts alleged in the non-moving party's pleading [] and . . . view those facts in the light most favorable to the non-moving party."  Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted).  To survive dismissal under Rule 12(b)(6), "the plaintiff's factual allegations must be sufficient 'to raise a right to relief above the speculative

5

level.'" Batterman, 829 F. App'x at 480 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). When reviewing a motion to dismiss, a district court is "not bound to accept a legal conclusion couched as a factual allegation." Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

The Court notes that under the Erie doctrine, Georgia law governs this suit. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1939). Under Georgia law, the scope of a written insurance agreement, like any other contract, is a question of law for the Court. O.C.G.A. § 13-2-1; Molly Pitcher Canning Co. v. Cent. of Ga. Ry. Co., 253 S.E.2d 392, 395 (Ga. Ct. App. 1979). "[W]hether an insurer has a duty to defend depends on the language of the policy as compared with the allegations of the complaint." Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 418 (Ga. 2012) (citation omitted). To avoid a duty to defend or indemnify, the complaint's allegations must unambiguously exclude coverage under the relevant policy. JNJ Found. Specialists, Inc. v. D.R. Horton, Inc., 717 S.E.2d 219, 223 (Ga. Ct. App. 2011).

In Georgia, insurance contracts "are interpreted by ordinary rules of contract construction. . . . Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." Burkett v. Liberty Mut. Fire Ins., 629 S.E.2d 558, 559-60 (Ga. Ct. App. 2006) (citation omitted). In

other words, "unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc., 466 S.E.2d 4, 6 (Ga. 1996) (citation omitted). However, "exclusions in an insurance policy are to be interpreted narrowly, in favor of the insured, 'on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.'" Rentrite, Inc. v. Sentry Select Ins., 667 S.E.2d 888, 892 (Ga. Ct. App. 2008) (citation omitted).

## B. Discussion

PIIC argues Plaintiffs cannot prove any set of facts that would allow them to prevail against PIIC. (Doc. 46, at 1-2.) PIIC argues (1) PGS' employees do not qualify as insureds under the Policies, so PIIC had no duty to defend or indemnify them in the Spence Action; (2) PIIC provided a full defense to PGS in the Spence Action, so any relief requested to provide PGS with a defense is moot; (3) PIIC owes no indemnification to PGS for the Settlement because PGS is only covered under the Policies as an additional insured for liability arising out of the negligence of Express, and there has been no finding that PGS' liability arose out of Express's negligence; (4) Plaintiffs are not entitled to contribution because they have not proven or alleged joint

7

negligence; and (5) since Plaintiffs did not allege joint negligence, the indemnity agreement between Express and PGS has not been triggered, and Express cannot be liable to pay damages on behalf of PGS or its employees under the Policies. (Id. at 2.) Plaintiffs oppose the motion (Docs. 57, 60)[3]. The Court considers each argument in turn.

Preliminarily, Plaintiffs move the Court to convert the motion to a motion for summary judgment, arguing it involves the same issues raised in their pending motion for summary judgment. (Doc. 60, at 5-7.) However, PIIC relies on the pleadings in its motion, not other evidence, so the Court finds conversion to a motion for summary judgment unnecessary. Thus, Plaintiffs' request to convert the motion is **DENIED**.

While the Court relies on the Services Agreement and the Policies to reach its rulings, it can do so without converting the motion because their authenticity is undisputed and they are central to Plaintiffs' claims. See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).

1. PGS' Employees' Coverage Under the Policies

First, PIIC argues neither Jackson nor Bacon qualify as insureds under the Policies, and PIIC only has a duty to defend and indemnify insureds, so its motion should be granted as to any

---

[3] Plaintiffs again filed a sealed (Doc. 57) and a redacted (Doc. 60) version of their response. For ease of reference, the Court relies on the redacted filing.

allegations relating to coverage for Jackson and Bacon. (Doc. 46, at 12-13.) Plaintiffs argue the Policies provide liability coverage to Express for obligations Express assumed in an "insured contract," which requires PIIC to reimburse Plaintiffs for costs incurred defending Jackson and Bacon. (Doc. 60, at 22.) Plaintiffs assert the Services Agreement is an "insured contract," and Express assumed liability for the defense and indemnity of PGS employees, including Jackson and Bacon, for claims resulting from the negligence of an Express employee. (Id.) In response, PIIC again argues the Services Agreement does not require PGS' employees to be additional insureds, so there is no duty to defend Jackson and Bacon. (Doc. 76, at 4.)

The Court first turns to the plain language of the Services Agreement and Policies. The relevant portions of the Services Agreement provide:

> Section 4.2: [Express] shall indemnify, defend, and hold harmless [PGS] from any claims arising from Assigned [Express] Employee claiming to be employees of [PGS] or that otherwise arise from Assigned [Express] Employee's assignment to [PGS].
>
> . . .
>
> Section 8.7: Additional Insured. All policies of insurance required under this Agreement, except those reference in Paragraph 8.1, shall be endorsed to name [PGS] as an Additional Insured."
>
> . . .
>
> Section 13.3: [Express] further agrees to indemnify, defend, save and hold harmless [PGS], its officers,

> directors, employees, and agents from and against all claims, losses, damages, and liabilities, including but not limited to reasonable attorneys' fees and other defense costs and expenses, to the extent resulting from the negligence or omission of the Assigned [Express] Employee that occurs while the Assigned [Express] Employee is assigned to [PGS], as well as any negligence or omission of [Express] during the term hereof.

(Doc. 16-1, at 4, 6, 8.)

The relevant portion of the Policies provides that Express is the "Named Insured," and under the CGL Policy, "insureds" includes: "Your employees, . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." (Doc. 16-3, at 15.) The CGL Policy also contains an endorsement titled "Additional Insureds When Required by Contract" (the "Additional Insureds Endorsement") that provides:

> Who Is An Insured is amended to include as an additional insured any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional insured for "bodily injury," "property damage" or "personal and advertising injury" but only for liability arising out of the negligence of the named insured.

(Id. at 44.)

PIIC first argues Jackson and Bacon are not covered because they are not "employees" as defined by the Policies. (Doc. 46, at 12-13.) Plaintiffs do not dispute this, and instead rely on the Additional Insureds Endorsement for coverage. (Doc. 60, at 22.) The Additional Insureds Endorsement provides that any person or

10

organization required by a written contract — the Services Agreement - is covered by the Policies. (Doc. 16-3, at 44.) Thus, the Court turns to the Services Agreement's language to determine who and what must be covered.

First, the Services Agreement requires: "All policies of insurance required under this Agreement . . . shall be endorsed to name [PGS] as an Additional Insured." (Doc. 16-1, at 6.) PIIC argues this is the extent of its requirements, and the Services Agreement does not require PGS' employees to be additional insureds. (Doc. 46, at 13.) But as Plaintiffs argue, the indemnification requirements of the Services Agreement provide coverage for Jackson and Bacon, even if they are not additional insureds under the Additional Insureds Endorsement. (Doc. 60, at 22.) Section 13.3 of the Services Agreement (hereinafter, the "Indemnification Provision"), outlined above, provides that Express will "indemnify, defend, save and hold harmless" PGS, *and its employees* from claims resulting from the negligence of an Express employee while assigned to PGS. (Doc. 16-1, at 8 (emphasis added).)

Based on the language of the Indemnification Provision, the Services Agreement requires Express to indemnify and defend Jackson and Bacon for claims resulting from the negligence of Express' employees. The Spence Action "alleged [M.] Johnson and Express were both negligent," and M. Johnson was an Express

11

employee assigned to PGS.  (Doc. 1, at 2.)  Thus, following the plain language of the Indemnification Provision, Express had to indemnify and defend Jackson and Bacon in the Spence Action since M. Johnson's negligence was a basis for the suit.  Since this is a duty arising out of an "insured contract," it carries that Jackson and Bacon qualify for coverage under the Additional Insureds Endorsement.  Based on this, the Court finds that PIIC's motion for judgment on the pleadings is **DENIED** as to PIIC's duty to defend or indemnify PGS employees Jackson and Bacon in the Spence Action.

2. Additional Indemnification to PGS

Next, PIIC argues it provided a full defense to PGS in the Spence Action, so Plaintiffs warrant no further relief as to PGS. (Doc. 46, at 14.)  PIIC also argues that the duty to indemnify requires an adjudication of full factual development, and since the Spence Action was settled without a finding of fault by any party, PIIC cannot be required to pay any other indemnification on behalf of PGS.  (Id. at 15-16.)  Plaintiffs argue PIIC's position misapplies the law because judgments and settlements both qualify as liabilities that trigger an insurer's duty to indemnify.  (Doc. 60, at 8 (citing Madmarc Cas. Ins. v. Fellows Labriola, LLP, 769 F. Supp. 3d 1311, 1318 (N.D. Ga. 2025)).)  Thus, Plaintiffs argue the Settlement "unquestionably qualifies as a 'liability' that may trigger PIIC's duty to indemnify."  (Id. at 9.)

12

As noted in the Court's March 24, 2025 Order, "[u]nder Georgia law, 'the fact that an indemnitee has settled or compromised the underlying tort action brought by the injured party does not bar the indemnitee from pursuing a claim for indemnification or contribution from a third-party indemnitor.'" (Doc. 32, at 13 (quoting U.S. Lawns, Inc. v. Cutting Edge Landscaping, LLC, 716 S.E.2d 779, 783 (Ga. Ct. App. 2011)).)  Thus, PIIC's argument that it cannot be required to indemnify PGS because there was a settlement fails.  PIIC's motion for judgment on the pleadings is therefore **DENIED** on this ground.

3. Contribution

Finally, PIIC argues Plaintiffs are not entitled to contribution because they have not proven or alleged fault by Express and/or M. Johnson.  (Doc. 46, at 16.)  PIIC asserts that since there was no consent judgment in the Spence Action, there was no admission of fault by Express.  (Id.)  It argues that for Plaintiffs to seek contribution, they must prove the Parties jointly caused the harm and they fail to even allege joint negligence.  (Id. at 16-17.)  Plaintiffs argue PIIC is distorting the pleadings and is required to indemnify PGS for the Spence Action so long as Express or M. Johnson's negligence contributed at all.  (Doc. 60, at 3.)  Plaintiffs again argue the Settlement triggers PIIC's duty to indemnify, and the allegations allege "the Spence Action arose and resulted from the negligence of [M.]

13

Johnson that occurred while [he] was assigned to PGS." (Id. at 8–9.) Plaintiffs also argue that PIIC is liable for any claims involving the joint or contributory negligence of PGS and Express, except for loss resulting from the sole negligence of PGS. (Id. at 10 (citing Doc. 52, ¶ 10).) Since there is only a "sole negligence" exception in the Policies, Plaintiffs argue, this reflects an intention to cover joint negligence. (Id.) Finally, Plaintiffs argue PIIC's reliance on common law contribution is unfounded because this involves the enforcement of an insurance policy, not just apportionment of fault between joint tortfeasors. (Id. at 11–12.)

As PIIC points out, "[w]here no judgment finding both tortfeasors liable has been entered, a right of contribution still exists, but the party seeking contribution must prove that his own negligent actions and those of the alleged joint tortfeasor jointly caused the harm." (Doc. 46, at 16 (quoting Zurich Am. Ins. v. Heard, 740 S.E.2d 429, 433 (Ga. Ct. App. 2013)).) The Georgia Court of Appeals has held that "when there has been a settlement containing no admission of liability, a party seeking contribution from another party to the settlement must prove joint negligence; it is not established by the settlement and dismissal with prejudice." Suggs v. Hale, 629 S.E.2d 11, 15 (Ga. Ct. App. 2006). Thus, despite PIIC's argument that contribution is impossible due to the Settlement, the Court finds its position meritless.

14

Instead, the Court finds PIIC's motion for judgment on the pleadings fails because contribution can still be established with a finding of joint negligence, which Plaintiffs argue can be determined by interpretation of the Policies. The Court does not delineate between these arguments at this point because regardless, PIIC's motion for judgment on the pleadings is **DENIED** as to contribution.

## C. Conclusion

For these reasons, the Court finds issues of material fact exist as to Plaintiffs' claims against PIIC, so PIIC's motion for judgment on the pleadings (Doc. 46) is **DENIED**. See Cunningham, 592 F.3d at 1255.

## IV. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor," Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted). The court must view the facts in the light most

15

favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor," United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted) (internal quotation marks omitted).  The court should not weigh the evidence or determine credibility.  Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that there is no evidence to prove a fact necessary to the non-movant's case.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam).  A mere conclusory statement that the

16

non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If, and only if, the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. Fitzpatrick, 2 F.3d at 1116. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. If the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

When opposing parties submit motions for summary judgment, the Court need not decide in favor of one party or the other.

17

United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir.1984) (noting that cross-motions for summary judgment need not result in the granting of summary judgment). Instead, the Court must evaluate each motion on its own merits, just as when only one party moves for summary judgment. See id. In other words, rejected one motion does not mean that the other must be granted.

In this action, the Clerk of Court provided the Parties notice of the motions for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 48, 53, 54.)[4] For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motions are ripe for consideration.

**V. PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT – COUNT IV AND PARAGRAPHS 10, 11, AND 12 OF EXPRESS' AFFIRMATIVE DEFENSES (DOC. 44) AND EXPRESS' MOTION FOR SUMMARY JUDGMENT (DOC. 49)**

Plaintiffs move for summary judgment on two of Express' affirmative defenses and Count IV of the complaint. (Doc. 45, at 2.) Express moves for summary judgment on Plaintiffs' claims against it, so the Court considers the motions together. (Doc. 49.)

---

[4] Griffith notices were not issued for the sealed motions (Docs. 42, 43), but they were issued for the redacted versions of the same (Docs. 44, 50), so the Court is satisfied the notice requirements have been met.

18

**A. Undisputed Facts[5]**

On April 29, 2020, Express and PGS entered the Services Agreement, through which Express agreed to supply temporary associates for various jobs at PGS. (Doc. 62, at 1, 9.) The Services Agreement requires that PGS be an additional insured under Express' insurance policies. (Id. at 10.) Express' CGL Policy from PIIC covers additional insureds where required by written contract for liability arising out of Express' negligence. (Id.) The Indemnification Provision provides that Express must indemnify and defend PGS and its employees from the negligence or omission of Express' employees. (Id.)

Express hired M. Johnson on March 26, 2021, and soon after placed him with PGS as a forklift operator. (Id. at 2.) On February 14, 2022, V. Johnson, a truck driver, picked up a load of aluminum profiles at the PGS Warehouse to be transported to Advanced Screenworks in Winder, GA. (Id.) Advanced Screenworks requested that the load be returned to PGS to remove the dunnage, so V. Johnson returned with the load to the PGS Warehouse on February 16, 2022. (Id.) Upon V. Johnson's return, M. Johnson and Jackson unloaded his flatbed truck using a forklift. (Id.) M. Johnson unloaded the driver's side of the flatbed while Jackson unloaded the passenger side. (Id. at 3.) Jackson completed the

---

[5] Some of these facts are repeated from the background section, but since the evidentiary standard is different for motions for summary judgment, the Court repeats the relevant undisputed facts between Plaintiffs and Express.

unloading of the profiles on the passenger side and went to fill his forklift with propane outside the PGS Warehouse. (Id.; Doc. 47, at 4.) There were two stacks of aluminum profiles left on the flatbed at that point, and M. Johnson continued to unload them. (Doc. 47, at 4.) While M. Johnson unloaded the remaining stacks, V. Johnson stood outside his flatbed truck. (Id.) Two profiles fell off the flatbed and landed on V. Johnson, who eventually succumbed to his injuries.[6] (Doc. 62, at 4.)

Bacon was PGS' warehouse manager and oversaw warehouse operations, including the loading and unloading of trucks, and M. Johnson was subject to supervision by PGS personnel while working at PGS. (Id. at 5, 11.) However, Plaintiffs assert no PGS supervisor directed M. Johnson's actions or oversaw his conduct in the moments leading up to the Accident – he was operating his forklift independently. (Id. at 5, 11-12.) Bacon was not present in the PGS Warehouse when the Accident occurred, and he did not observe the unloading of V. Johnson's truck. (Doc. 63, at 5.) PGS provided M. Johnson forklift training and certification, including recertification shortly before the Accident. (Doc. 62, at 13.) PGS had determined M. Johnson was generally qualified to operate a forklift, and it did not terminate or discipline him

---

[6] This fact does not contain a cite to the record, so it does not comply with the Local Rules. See L.R. 56.1, SDGa. In any event, this fact is not disputed by the Parties, so the Court accepts it as true based on the record.

after the Accident – M. Johnson remained with PGS until his death later the same year. (Id. at 6, 17.)

The product manufacturer of the aluminum profiles provided unloading instructions for the profiles, but Bacon did not distribute the instructions to PGS' forklift operators. (Id. at 18, 20.) The profiles were shipped in containers from Turkey and were stacked and secured using 1" by 4" wooden dunnage, and the manufacturer instructions provided for removal of the dunnage before unloading. (Id. at 19.) Bacon instructed PGS forklift drivers, including M. Johnson, to move the profiles four at a time if the dunnage remained intact and the stack was stable, and there had been no internal discussions at PGS expressing concerns about this method. (Id. at 20.) Bacon believed the dunnage on the side of the profiles made them safer to handle. (Id. at 21.)

PGS did not maintain security and safety signage at the PGS Warehouse requiring truck drivers to remain in their cab or stand outside the PGS Warehouse during cargo loading and unloading. (Id. at 22.) Nor was there any PGS policy requiring forklift drivers to maintain constant visual contact with truck drivers during loading and unloading. (Id.) Bacon testified that it would be impractical to require forklift drivers to hop off their forklift and verify the whereabouts of the driver every time they got a new load from the truck. (Id.)

21

The Spence Action was filed on May 18, 2022, alleging that Express and its franchisee were vicariously liable for the accidental death of V. Johnson at the PGS Warehouse on February 16, 2022 under respondeat superior and agency for the negligent and wrongful acts and omissions of Express associate M. Johnson. (Id. at 7-8.).   PIIC agreed to defend and indemnify PGS in the Spence Action for the alleged negligent acts of M. Johnson, but not for PGS' or PGS' employees' own negligent acts or omissions. (Id. at 8-9.)  The Spence Action was settled with Express and PIIC paying 50% of the Settlement and PGS and TT Club paying the other 50%, and neither side admitted any liability.   (Id. at 9.) Plaintiffs now seek to recover the 50% they paid from Express and PIIC.   (Id.)

**B. Discussion**

Express' motion for summary judgment and Plaintiffs' partial motion for summary judgment involve many of the same issues, so the Court considers them together.   Express argues it only owes a duty to defend and indemnify PGS for Express' own negligence or that of Express' employees placed at PGS, and if the Court determines Express owes a duty to defend and indemnify PGS for its own negligence, or that of its employees, such duties hinge on a finding by the Court of *some* negligence by Express, which Express refutes.   (Doc. 49, at 6.)   Express contends it has no duty to indemnify PGS until the Court determines V. Johnson's death was at

22

least partly attributable to Express' negligence. (Id. at 11-12.) It also contends it was PGS' sole negligence that led to the Accident because PGS trained and certified M. Johnson, and Bacon personally tested him and determined he was a qualified forklift operator. (Id. at 14-15.)

Plaintiffs move for summary judgment on Count IV, seeking a declaration that PGS, Jackson, and Bacon are entitled to full defense and indemnity from Express under the Services Agreement. (Doc. 45, at 1.)

### 1. Express' Duty to Defend/Indemnify PGS

First, the Court reiterates its March 24, 2025 Order in which it found the Services Agreement required Express to defend and indemnify PGS *even if* PGS' negligence may have partially caused the loss.[7] (Doc. 32, at 16.)   Thus, the Court rejects any attempt by Express to relitigate this issue. (See Doc. 49, at 9-11.)

For the same reasons, Plaintiffs are entitled to summary judgment on Express' affirmative defense alleging the same, Paragraph 12. Paragraph 12 provides: "According to the terms of the Services Agreement, Express is only required to indemnify, defend, or hold harmless PGS for liability arising out of negligent acts by Express or its employees." (Doc. 37, at 20.) Since this is an inaccurate statement, this affirmative defense fails.

---

[7] This is the portion of the Court's March 24, 2025 Order the Court clarified above. The original order inadvertently referenced TT Club instead of PGS as a party to the Services Agreement. (Doc. 32, at 15-16.)

Thus, Plaintiffs' motion for summary judgment as to Paragraph 12 of Express' affirmative defenses is **GRANTED**.

2. Duty to Defend and Duty to Indemnify PGS, Jackson, and Bacon and a Finding of Negligence

Next, Express argues that if it has a duty to defend and indemnify PGS, the duty to indemnify is contingent upon a finding by this Court of negligence by Express. (Doc. 49, at 11.) It argues the Spence Action was settled without any finding of fault, so it does not have to indemnify PGS until this Court determines V. Johnson's death was at least partly attributable to it. (Id. at 11-12.) Express argues that "[a]ny damages and liability incurred by PGS, Jackson and Bacon resulting in their *sole negligence* are not covered by the Services Agreement." (Id. at 13.) Express then asserts the undisputed facts show M. Johnson was under the supervision, control, and direction of PGS during the Accident, Bacon was responsible for the processes at the PGS Warehouse, and ultimately it was PGS' sole negligence that caused V. Johnson's death. (Id. at 14-18.)

Plaintiffs first argue the duty to defend and indemnify are distinct, and Express owed a duty to defend Jackson and Bacon based on the allegations of the complaint. (Doc. 61, at 11-12.) Plaintiffs argue Express' refusal to defend was a breach of its contractual obligations, so Plaintiffs are entitled to summary judgment requiring Express to reimburse the legal costs incurred

24

in defending Jackson and Bacon and defending PGS for vicarious liability. (Id. at 12.) As to the finding of negligence, Plaintiffs assert that under Georgia law, Express' indemnity obligations arise without the need for adjudication of fault. (Id. at 13-14.)

First, as to the duty to defend Jackson and Bacon, the Court agrees with Plaintiffs that "[i]t is well-settled in Georgia that the duty to defend is distinct from, and broader than, the duty to indemnify." Coca-Cola Sw. Beverages LLC v. Marten Transp., Ltd., No. 1:21-CV-4961, 2023 WL 5051353, at *3 (N.D. Ga. Aug. 7, 2023) (citations omitted). The duty to defend deals with "whether the complaint alleges a claim that is covered by the defense agreement," in fact, "[i]f the facts as alleged in the complaint bring the occurrence even arguably within the agreement's coverage, the insurer has a duty to defend the action, regardless of whether liability is ultimately established." Id. (citation omitted and alterations adopted). "As a result, an insurer might be required to defend an insured, but at the end of the underlying lawsuit, have no duty to indemnify him." Id. (citation omitted). In Georgia, an insurer's refusal to defend is justified only if the complaint "does not assert any claims upon which there would be insurance coverage." City of Atlanta v. St. Paul Fire & Marine Ins., 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) (citation omitted).

25

As Plaintiffs argue, the Court finds there is no genuine dispute of material fact that Express' duty to defend Jackson and Bacon was triggered by the complaint's allegations. (Doc. 61, at 11-12; Doc. 45, at 9-10.) The Indemnification Provision provides Express will "indemnify, defend, save and hold harmless" PGS, *and its employees* from claims resulting from the negligence of an Express employee while the Express employee is assigned to PGS. (Doc. 16-1, at 8.) Thus, the plain language provides that Express should have defended Jackson and Bacon for claims resulting from the negligence of Express employee M. Johnson. The Spence Action "alleged [M.] Johnson and Express were both negligent," and M. Johnson was an Express employee assigned to PGS. (Doc. 1, at 2.) Thus, under the Indemnification Provision, the complaint's allegations bring the occurrence arguably within the Services Agreement's coverage, so Express had to defend Jackson and Bacon in the Spence Action since M. Johnson's negligence was a basis for the suit.

Based on this, Express' motion for summary judgment is **DENIED** and Plaintiffs' motion for summary judgment is **GRANTED** as to Express' duty to defend Jackson and Bacon in the Spence Action. There is no genuine dispute of material fact that Express must reimburse the legal fees and expenses incurred and paid by Plaintiffs to defend Jackson and Bacon in the Spence Action.

26

As to the duty to indemnify, Express argues a finding of negligence as to Express is required for indemnification. (Doc. 49, at 11-18.) Plaintiffs argue PGS reasonably settled the claims, and there is no need for any adjudication of fault. (Doc. 61, at 13.) Plaintiffs also argue that Express must provide full indemnification to PGS for the Spence Action, even if PGS and its employees partially contributed to the loss. (Doc. 45, at 3.) As the Court explained, Georgia law allows for indemnification after settlements, so the only possible explanation is that indemnification is allowed without a finding of negligence. (Doc. 32, at 13-14.)

"Generally, the fact that an indemnitee has settled or compromised the underlying tort action brought by the injured party does not bar the indemnitee from pursuing a claim for indemnification or contribution from a third-party indemnitor." Cajun Contractors, Inc. v. Peachtree Prop. Sub, LLC, 861 S.E.2d 222, 245 (Ga. Ct. App. 2021) (citation omitted). "[T]o recover on the indemnification claim, the indemnitee must show that the settlement with the injured party was reasonable, prudent and reached in good faith." Id. (citation and internal quotations omitted). If an indemnitee had a defense available and failed to assert it, then they are not entitled to indemnification, but if the indemnitor refuses to defend the claim, "the indemnitee is in full charge of the matter and may make a good faith settlement

27

without assuming the risk of being able to prove absolute liability or the actual amount of the damage." Id. at 246 (citation omitted). To prove reasonableness of the settlement, the indemnitee "only ha[s] to come forward with evidence reflecting that they *could have been held liable* in the underlying tort action had the case not been settled." Id. (citation and quotation marks omitted and alterations adopted) (emphasis added).

For these reasons, the Court rejects Express' position that negligence must be established. Thus, Express' motion for summary judgment is **DENIED** on this ground. The undisputed facts show PGS provided sufficient evidence it *could* have been liable in the Spence Action for the negligence of M. Johnson. Plaintiffs rely on two experts' opinions that M. Johnson bore at least some measure of fault for the Accident, and the facts surrounding M. Johnson unloading the remaining cargo when the fall occurred, among other things. (Doc. 45, at 15-16.) The Court finds Plaintiffs provide evidence sufficient to prove PGS *could* have been held liable for M. Johnson's negligence. Nevertheless, the Court finds there is a genuine dispute of material fact as to the *reasonableness* of the Settlement to ensure PGS made a good faith settlement such that it can seek indemnification from Express.

While Plaintiffs argue they made a "reasonable and good faith settlement," Express contends PGS unreasonably settled the Spence Action when it had several complete defenses whereupon it could

28

have been granted summary judgment.[8] (Doc. 61, at 16; Doc. 72, at 20.) "Questions regarding the reasonableness of the settlement are normally for a jury to decide." Cajun Contractors, 861 S.E.2d at 247 (citations omitted). "The reasonableness inquiry is usually fact intensive and can be legally complex." Id. (citation omitted). The Georgia Court of Appeals has reasoned that in evaluating reasonableness, affidavits or other evidence that can shed light on the reasonableness of the settlement amount are necessary, "such as evidence of judgments entered in other cases involving similarly situated parties or expert opinion testimony." Id. (citations omitted). Because the Parties do not provide full arguments and briefing as to the reasonableness of the Settlement amount, the Court finds a genuine dispute of material fact as to the reasonableness of the Settlement, and Plaintiffs' motion for summary judgment on indemnification is **DENIED**.

### 3. Contribution

Plaintiffs seek contribution from Express under Count VI for the funds TT Club paid for the defense and indemnity of PGS, Jackson, and Bacon in the Spence Action. (Doc. 1, at 18.) Express argues Plaintiffs are not entitled to contribution because they have not proven or even alleged joint negligence. (Doc. 49, at 18.) It argues that to seek contribution, Plaintiffs must prove

---

[8] Express' reply brief goes extensively through the complete defenses PGS could have used to prevail in the Spence Action but ignored by settling its claims. (Doc. 72, at 11-21.)

the Parties jointly caused the harm, which a settlement does not prove. (Id. at 19.) Plaintiffs argue there is no genuine dispute of material fact that M. Johnson's negligence contributed to the Accident. (Doc. 61, at 17.)

First, Express' argument that Plaintiffs did not allege joint negligence is unfounded as the Court already found the Spence Action alleged M. Johnson and Express were both negligent, and Express was vicariously liable for M. Johnson's negligence; and Jackson, Bacon, and PGS were negligent, and PGS was vicariously liable for Jackson and Bacon's negligence. (Doc. 32, at 2 (citing Doc. 1, at 1-2, 9).) The Court thus turns to the law of contribution.

A right to contribution exists even without a judgment, but the party seeking contribution must prove their negligence and that of the alleged joint tortfeasor jointly caused the harm. Zurich Am. Ins., 740 S.E.2d at 433. "In other words, the party seeking contribution must show that the alleged joint tortfeasor committed separate and independent acts of negligence." Gold Cross EMS, Inc. v. Child.'s Hosp. of Ala., 648 F. App'x 976, 978 (11th Cir. 2016) (citation and internal quotation amrks omitted). Thus, unlike indemnification, Plaintiffs must prove joint negligence to seek contribution from Express.

Express argues PGS is solely negligent for the Accident because Bacon ignored the manufacturer's unloading instructions

30

despite being in possession of them, Bacon instructed M. Johnson and other forklift operators to move stacks of four pallets at a time, and Bacon testified "it's my warehouse and I'm responsible for everything that happens, [so] I like to make sure things are done the way I would like for them to be done." (Doc. 49, at 15-16 (citation omitted).) Express argues that since Bacon instructed M. Johnson to do what he did, and Bacon admitted being responsible for everything that happens at the PGS Warehouse, PGS is solely negligent for the Accident. (Id. at 15-17.) Plaintiffs argue there is no genuine dispute of material fact that M. Johnson bore *some amount* of fault for the Accident. (Doc. 61, at 19.) Plaintiffs rely on two experts that concluded M. Johnson "caused or contributed to the [A]ccident by inserting the forks of his lift too far, disturbing a second stack, and causing it to fall." (Id. (citation omitted).) Further, Plaintiffs argue Express and PIIC contributed 50% of the Settlement to obtain a release of negligence claims against Express and M. Johnson, underscoring any suggestion that M. Johnson bore no responsibility for the Accident. (Id. at 20.) Plaintiffs argue "[t]he record 'overwhelmingly' shows [M.] Johnson's negligence contributed to the [A]ccident." (Id.)

The Court finds there is a genuine dispute of material fact as to the contribution claim. As to the contribution Express already made to the Settlement, "[t]here are numerous reasons why a party might settle a case even if a potentially meritorious

31

defense to liability exists." Suggs, 629 S.E.2d at 15. Thus, the Court finds the Settlement alone is insufficient to show joint negligence by Express. There is also a genuine dispute over the negligence involved in the Accident. Plaintiffs' expert Kenneth Smith testified the cause of the Accident was M. Johnson's improper use of the forklift, but Express argues Smith could not testify with a reasonable degree of engineering and/or scientific certainty that M. Johnson was negligent in causing the Accident, and Smith also acknowledged the flatbed could have sprung and caused the profiles to fall. (Doc. 3, at 2; Doc. 73, at 3.) Plaintiffs' other expert, Nicholas Barta, testified to the same, but Express again argues it was not to a reasonable degree of engineering and/or scientific certainty. (Doc. 45, at 16; Doc. 66, at 5.) Express also points to statements and discussions between M. Johnson and Bacon after the Accident that it was the spring of the flatbed after weight was lifted off that caused the profiles to fall. (Doc. 66, at 7.) Since the Court is not to weigh the evidence or determine credibility when considering a motion for summary judgment, and there are several discrepancies as to negligence, the Court finds there is no conclusive evidence proving whose negligence caused the Accident, and summary judgment is not appropriate as to contribution. See Anderson, 477 U.S. at 255. Thus, Express' motion for summary judgment is **DENIED** as to contribution.

### 4. Affirmative Defenses, Paragraphs 10, 11, and 12

Plaintiffs move for summary judgment on Express' affirmative defenses Paragraph 10, 11, and 12 which provide:

> 10. Contractual indemnities may not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence is covered, which Express submits it does not.
>
> 11. The indemnity language in the Services Agreement is ambiguous.
>
> 12. According to the terms of the Services Agreement, Express is only required to indemnify, defend, or hold harmless PGS for liability arising out of negligent acts by Express or its employees.

(Doc. 37, at 20.)   The Court already found summary judgment for Plaintiffs as to Paragraph 12.  Paragraph 10 contains an inaccurate legal conclusion and Express' argument as to indemnity.  The Court already found Express must indemnify Plaintiffs for joint negligence, even if PGS was also negligent, so this affirmative defense is also meritless.  Finally, as to Paragraph 11, the Court does not find the indemnity language to be ambiguous, as its clear language is interpreted under Georgia contract interpretation principles.  Thus, Plaintiffs are entitled to summary judgment on Paragraphs 10, 11, and 12 of Express' affirmative defenses.

### 5. Conclusion

33

Based on the above, the Court finds Express' motion for summary judgment (Doc. 49) is **DENIED** on all grounds. Plaintiffs' partial motion for summary judgment (Docs. 43, 44) is **GRANTED IN PART AND DENIED IN PART.** Plaintiffs are entitled to summary judgment on Paragraphs 10, 11, and 12 of Express' affirmative defenses and that PGS, Jackson, and Bacon are entitled to a full defense from Express under the Services Agreement, but there is a genuine dispute of material fact as to the reasonableness of the Settlement, and thus summary judgment is inappropriate as to Express' indemnity obligations.

## VI. PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT – COUNT I AND PARAGRAPH 18 OF PIIC'S AFFIRMATIVE DEFENSES (DOC. 50)

Finally, the Court turns to Plaintiffs' partial motion for summary judgment against PIIC.

### A. Undisputed Facts

The undisputed facts between Plaintiffs and PIIC largely mirror that of the previous motions. Thus, the Court only supplements with additional facts relevant to this motion.

Primarily, the Parties agree the language of the Services Agreement and Policies speak for themselves, thus the Court incorporates the sections quoted above and supplements as needed for the analysis. (Doc. 65, at 2-6.) Plaintiffs rely on their expert witnesses Smith and Barta's testimony for this motion,

referencing both their interrogatories and deposition. (Doc. 52, at 8-11.) PIIC does not dispute that Smith and Barta made these statements, but points out that they did not observe the Accident and denies that any of their opinions were established to be reliable or admissible in the Spence Action. (Doc. 65, at 12-19.)

PGS tendered the Spence Action to PIIC for defense and indemnification, and PIIC provided a full defense to PGS. (Id. at 19.) The Spence Action settled in February 2024, and PIIC and Express paid half of the Settlement. (Id. at 20.) TT Club contributed the other half, and reserved its rights (and PGS' rights) to pursue recovery of the funds it paid from Express and PIIC. (Id.) PIIC contends it owes no further indemnification to PGS. (Id.) The Parties agree that PIIC provided PGS with a full defense of the Spence Action, but PIIC refused to defend Jackson and Bacon and refuses to indemnify PGS for any damages arising from their negligence. (Doc. 51, at 9; Doc. 64, at 10, 15-16.)

## B. Discussion

Plaintiffs move for summary judgment on Count I, seeking a declaration that PIIC must fully indemnify PGS for the amounts Plaintiffs contributed to the Settlement. (Doc. 51, at 2.) They also seek summary judgment on PIIC's affirmative defense, Paragraph 18, where PIIC asserts PGS is not entitled to coverage for its vicarious liability arising from the negligent acts of Jackson and Bacon. (Id. at 1; Doc. 16, at 31.)

Preliminary, the Court reiterates that Georgia law governs interpretation of the Policies. See supra Part II.A. Following Georgia contract interpretation, the Court turns to the Parties' arguments.

## 1. "Arising Out Of" Language

The Additional Insureds Endorsement from the CGL Policy provides:

> Who Is An Insured is amended to include as an additional insured any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional insured for "bodily injury," "property damage" or "personal and advertising injury" but only for liability arising out of the negligence of the named insured.

(Doc. 16-3, at 44.) Plaintiffs argue this language requires PIIC to fully indemnify PGS for liability resulting from PGS' and Express' combined negligence. (Doc. 51, at 11.) PIIC argues Plaintiffs' interpretation of this endorsement is incorrect, and PGS receives no coverage for vicarious liability arising from the negligence of Jackson and Bacon. (Doc. 64, at 15-32.)

The Court finds the clear language of the Additional Insureds Endorsement provides coverage to PGS, Jackson, and Bacon for liability arising out of the negligence of Express or its employees. As outlined above, this liability kicks in through the Indemnification Provision of the Services Agreement. See supra Part III.B.1. The Court also found the complaint clearly alleged negligence by Express and M. Johnson. Thus, as the Court already

36

found, PIIC owed a duty to defend Jackson and Bacon, so Plaintiffs are entitled to recover the funds they expended to defend them.

PIIC argues there should be no indemnification for PGS' own negligence or for the negligence of its employees, Jackson and Bacon. (Doc. 64, at 14.) Georgia law interprets "arising out of" broadly, so here, it simply requires that Express or its employees be partially at fault to trigger liability. See Barrett v. Nat'l Union Fire Ins., 696 S.E.2d 326, 331 (Ga. Ct. App. 2010) ("[W]here the phrase 'arising out of' is found in a coverage provision of an insurance policy, Georgia courts have construed that phrase broadly, holding that 'where an insurance contract provides that a loss must 'arise out of' a specified act, it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship.'" (citations omitted)). This is true even if PGS' negligence may have partially caused the loss. See Travelers Prop. Cas. Co. of Am. V. CVB Indus. Contracting, Inc., 697 F. Supp. 3d 1334, 1356 (M.D. Ga. 2023) (citing Laws. Title Ins., 45 S.E.2d at 542) ("[W]hen an indemnification clause requires indemnification of losses that 'arise out of' certain specified events but does not explicitly mention the indemnitee's negligence, the clause still requires full indemnification although the indemnitee's negligence may have partially caused the loss.").

37

Following this, and Georgia's requirement that "insurance policies are liberally construed in favor of coverage," the Court finds there is no dispute of material fact that PIIC must indemnify PGS, Jackson, and Bacon so long as there is any liability on behalf of Express or M. Johnson. Barrett, 696 S.E.2d at 331 (citation omitted and alterations adopted).

2. Sole Negligence Exception

The Additional Insured Endorsement also provides: "This insurance is primary, with any insurance or self-insurance program maintained by [PGS] being non-contributing excepting loss result from the sole negligence of [PGS]." (Doc. 16-3, at 44.) Thus, PIIC does not provide coverage to PGS for its sole negligence, only when there is some negligence by Express or its employees.

Plaintiffs argue that PIIC's inclusion of a sole negligence exception shows it intended to extend coverage to cases of joint or combined negligence. (Doc. 51, at 17.) PIIC's response does not appear to dispute this. In any event, the Court looks to Georgia law to ensure this is a correct interpretation.

Plaintiffs rely on Myers v. Texaco Refining & Mktg., Inc. to argue that inclusion of a "sole negligence" exception "clearly reflects an intention to provide coverage in cases of joint negligence." (Id. (citing 422 S.E.2d 216, 216 (Ga. Ct. App. 1992)).) As the Georgia Court of Appeals explained, "Georgia law does not permit us to ignore plain language in a contract or to

38

construe it as meaningless," so to construe the sole negligence provision as having any reason for being, an agreement to indemnify for claims arising out of joint negligence must be directly deduced. Myers, 422 S.E.2d at 219 (citation omitted). The same logic follows here – since PIIC went through the effort to include a sole negligence exception, it only makes sense that joint or combined negligence are not excluded. If joint or combined negligence was to be excluded, then PIIC would have included exceptions noting the same, but it did not.

Thus, the Court finds the sole negligence exception is further support that PIIC must indemnify PGS for liability resulting from PGS and Express' combined negligence.

### 3. Indemnification

As to indemnity, Plaintiffs assert PGS reasonably anticipated liability arising from M. Johnson's negligence, so PIIC must fully indemnify PGS for the Settlement. (Doc. 51, at 23.) Plaintiffs argue they have shown evidence they could have been liable in the Spence Action had it not settled, so they can obtain indemnification. (Id. at 24-25.) Plaintiffs rely on the fact M. Johnson was unloading the truck when the Accident occurred, two experts attribute the cause of the Accident to his negligent operation of the forklift, and since M. Johnson passed away shortly after the Accident, there would have been no direct evidence to rebut the expert opinions. (Id. at 25.) Plaintiffs thus assert

39

they reasonably anticipated potential liability arising out of M. Johnson's negligent conduct, and that is all the law requires to trigger PIIC's duty to fully indemnify them. (Id. at 25-26.) In other words, Plaintiffs argue they need not prove PGS was not solely responsible to be entitled to the benefit of PIIC's additional coverage. (Id. at 26.) In response, PIIC makes the same arguments it made in its motion for judgment on the pleadings, arguing PGS must prove joint negligence to be entitled to indemnification. (Doc. 64, at 13.) PIIC argues fault remains undetermined because of the Settlement, so summary judgment for Plaintiffs is inappropriate. (Id. at 14, 21.)

First, the Court points out that contribution and indemnification are distinct terms –

> Contribution "refers to *apportioning* damages between joint tortfeasors by requiring each to pay his proportionate share, while indemnity implies a *shifting* of the *entire loss* from the party who paid the judgment to the tortfeasor who should in fairness bear it. The distinction is often blurred."

Thyssen Elevator Co. v. Drayton-Bryan Co., 106 F. Supp. 2d 1342, 1345 (S.D. Ga. 2000) (quoting Greyhound Lines, Inc. v. Cobb Cnty., 681 F.2d 1327, 1332 n.7 (11th Cir. 1982)) (emphasis in original). PIIC continually makes arguments about both, but in this motion for summary judgment, Plaintiffs are not seeking to apportion fault among joint tortfeasors, they are seeking to enforce PIIC's contractual duty to indemnify PGS for liabilities arising from

40

Express' or M. Johnson's negligence as outlined in Count I of the complaint. (Doc. 75, at 2-3.) Thus, the Court does not address PIIC's contribution arguments here. (Doc. 64, at 11-14.)

Turning to indemnification, as the Court explained in analyzing the Express motions, the undisputed facts show PGS provided sufficient evidence it *could* have been liable in the Spence Action for the negligence of M. Johnson. Even so, the Court finds a genuine dispute of material fact as to the *reasonableness* of the Settlement amount to ensure PGS made a good faith settlement such that it can seek indemnification from PIIC. See supra Part V.B.2. Thus, summary judgment is not appropriate because the Parties do not provide sufficient evidence, through affidavits, comparable judgments, or otherwise, to determine whether the Settlement amount was reasonable.

### 4. Affirmative Defense, Paragraph 18

Plaintiffs also move for summary judgment on PIIC's affirmative defense Paragraph 18 which provides:

> PGS' vicarious liability for the negligent acts of Jackson and Bacon alleged in the Amended & Recast Complaint does not arise out of the liability of Express Services. Therefore, PGS is not entitled to coverage under the Policies for its vicarious liability arising from the negligent acts of Jackson and Bacon.

(Doc. 16, at 31.) As explained by the Court above, PGS is entitled to recover from PIIC so long as there is any liability on behalf of Express or M. Johnson – there is only a sole negligence

41

exception, not one for combined negligence. Thus, the Court finds there is no genuine dispute of material fact that this affirmative defense fails, so Plaintiffs are entitled to summary judgment on Paragraph 18.

### 5. Conclusion

For these reasons, Plaintiffs' motion for partial summary judgment (Docs. 42, 50) is **GRANTED IN PART AND DENIED IN PART.** Plaintiffs are entitled to summary judgment on Paragraph 18 of PIIC's affirmative defenses, but there is a genuine dispute of material fact as to the reasonableness of the Settlement, and thus summary judgment is inappropriate as to PIIC's indemnity obligations.

## VII. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' motion for clarification of the Court's March 24, 2025 Order (Doc. 33) is **GRANTED,** Plaintiffs' motion for partial summary judgment as to PIIC (Docs. 42, 50) is **GRANTED IN PART AND DENIED IN PART,** Plaintiffs' motion for partial summary judgment as to Express (Docs. 43, 44) is **GRANTED IN PART AND DENIED IN PART,** PIIC's motion for judgment on the pleadings (Doc. 46) is **DENIED,** and Express' motion for summary judgment (Doc. 49) is **DENIED.** The case shall proceed to trial in due course.

42

ORDER ENTERED at Augusta, Georgia, this ___17th___ day of March, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA